IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHARLES LEROY FREEMAN, III,

                **Plaintiff,**

v.                                                     CASE NO. 24-3038-JWL

INTERNAL REVENUE SERVICE, et al.,

                **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff and Kansas prisoner Charles Leroy Freeman, III brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. He is in custody at Winfield Correctional facility (WCF) and has been granted leave to proceed in forma pauperis. (Doc. 5.) This matter comes before the Court on Plaintiff's second amended complaint, filed May 20, 2024. (Doc. 10.) The Court has conducted the statutorily required screening of the second amended complaint and, for the reasons explained below, will deny the motion to appoint counsel and dismiss this matter without prejudice.

**I.    The Initial Complaint and the Amended Complaint**

Plaintiff filed his original complaint in this matter on March 15, 2024. (Doc. 1.) Including all attachments, Plaintiff's initial submission consisted of 203 pages of documents. Because Plaintiff is a prisoner, the Court is required by statute to screen the complaint and to dismiss it or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). When the Court screened the complaint, it found that the facts Plaintiff alleged were "broad and difficult to follow" and Plaintiff's claims were unclear. *Id.* at 3-4, 6-7.

Thus, on March 19, 2024, the Court issued a Memorandum and Order (M&O) identifying

1

the following deficiencies: (1) failing to comply with the rules on joining defendants and claims in a single action; (2) failing to properly use the required court-approved form; (3) failing to clearly identify Defendants and the legal basis for the claims being asserted; (4) naming improper or immune Defendants; (5) failing to state a plausible claim for relief; and (6) seeking relief not available in this action. (Doc. 6, 4-13.) The Court granted Plaintiff time in which to file a complete and proper amended complaint curing the deficiencies. *Id.* at 14. Plaintiff timely filed an amended complaint and attachments that totaled 226 pages in length. (Docs. 7, 7-1, and 7-2.)

After screening the amended complaint, the Court issued a second M&O on April 22, 2024, which is referred to in this order as the second M&O. (Doc. 8.) In the second M&O, the Court noted that the amended complaint and its attachments did not clearly state Plaintiff's claims. *Id.* at 2. Specifically, although Plaintiff used the appropriate spaces on the court-approved form to identify Count I as a violation of the Takings Clause of the Fifth Amendment and Count II as a violation of the Fourteenth Amendment, he referred at other points "to negligence, negligent supervision, conspiracy, fraud, slander, the violation of various state statutes, 'Title VII,' and the erroneous suspension of Plaintiff's VA benefits." *Id.* at 3.

The Court explained:

> Rule 8 of the Federal Rules of Civil Procedure requires that a complaint "contain . . . a short and plain statement of the claim showing that [the plaintiff] is entitled to relief." The purpose of Rule 8 "is 'to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief.'" *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1998) (quoting *Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1371 (10th Cir. 1979)). Even liberally construing the pro se amended complaint, the Court cannot determine the precise nature claims alleged therein, so the amended complaint would not give opposing parties fair notice of the basis of the claim or claims against them.
>
> When a plaintiff fails to comply with Rule 8, this Court is authorized to

dismiss the complaint. *See Nasious* v. *Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162 n.3 (10th Cir. 2007); *Chavez v. Huerfano County*, 195 Fed. Appx. 728, 730 (10th Cir. 2006) (unpublished) (affirming dismissal without prejudice for violation of Rule 8 and stating that "[i]t is not the role of the court to sort through a lengthy complaint to construct the plaintiff's case"); *Triplett v. U.S. Dept. of Defense*, 2011 WL 1113551 (D. Kan. March 24, 2011) (unpublished). Rather than immediately imposing such a harsh consequence, however, the Court will allow Plaintiff a final opportunity to clearly set forth his claims in this matter.

Plaintiff must utilize the required court-approved form to submit a second amended complaint and he must provide the information requested therein. The Court requires the use of these forms so that it can readily determine the nature of a plaintiff's claims and the facts supporting each claim. Put another way, the court-approved form helps the Court to identify the particular claims by providing specific places for a plaintiff to identify each individual defendant, each count, and the facts that support each count. The Court cannot make this determination from the amended complaint now before it.

Plaintiff must follow the directions on the court-approved form, including the instruction to provide a statement of supporting facts for each claim "without citing legal authority or argument" for which he "may attach up to two additional pages." (*See* Doc. 7, p. 3.) Although the Court appreciates Plaintiff's desire to set out all of the factual allegations and supporting legal authority for his claims, Plaintiff must comply with Rule 8. "Rule 8 does not require Plaintiff[] to state precisely each element of [his] claims or describe every fact with specific detail, but it does require [Plaintiff] to set forth sufficient factual allegations on which a recognized legal claim could be based." *McCollum v. Harrison,* 2022 WL 4227317, *3 (D. Kan. Aug. 17, 2022) (citation omitted) (unpublished report and recommendation), *adopted at* 2022 WL 4182333 (D. Kan. Sept. 13, 2022). As the Tenth Circuit has explained, "a complaint must explain what each defendant did to [the plaintiff]; when the defendant did it; [and] how the defendant's action harmed [the plaintiff]." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (describing how to provide the "short and plain statement" required by Rule 8).

(Doc. 8, p. 3-5 (footnote omitted).)

The second M&O also reminded Plaintiff that (1) federal actors and individuals who were not acting under color of state law are not proper Defendants to a § 1983 claim; (2) he must attribute specific acts or omissions to specific Defendants, rather than using the general collective term "Defendants"; (3) vicarious liability does not apply in § 1983 actions; and (4) conclusory statements without specific supporting facts are insufficient to state a plausible claim for relief. *Id.*

3

at 5-7. The Court cautioned Plaintiff that "he should limit himself to necessary additions [to the form complaint] and organize additional pages in a way that allows for the Court and opposing parties to understand the claims being made." *Id.* at 7.

## II. The Second Amended Complaint

Plaintiff timely filed his second amended complaint and its attachments on May 20, 2024. (Doc. 10.) The Court has conducted the statutorily required screening and assures Plaintiff that it has carefully read and considered each of the more than 200 pages and has liberally construed them, drawing all reasonable inferences in Plaintiff's favor. The events that led to this case are set forth at various points throughout the second amended complaint and its attachments. Highly summarized and taken as true, they show the following.

At all relevant times and until October 16, 2018, Plaintiff received disability benefits as a United States Veteran; these benefits are referred to in this order as the VA benefits. *Id.* at 54, 61. In 1995, Alfred L. Rayburn, II hired attorney Martin D. Geeding to collect a debt that Plaintiff owed to his company, Rental Exchange System, Inc. *Id.* at 39, 45. At some point, Geeding obtained a state-court garnishment order to recover the debt. *Id.*

On November 4, 2016, Plaintiff was arrested and taken to the Shawnee County Jail (SCJ). (Doc. 10, p. 54.) He received medical treatment, both at the SCJ and after being taken—while in custody—to a local hospital. *Id.* Eventually, Plaintiff was incarcerated. During his incarceration, his VA benefits were direct-deposited into a bank account outside the prison system, after which Plaintiff's payee, most recently Debra J. Espinoza, sent $300.00 per month from that outside account to Plaintiff's inmate account. *Id.* at 54-55.

The Board of County Commissioners of the County of Shawnee, Kansas (the Board) and B. Cole, the director of the SCJ, sued Plaintiff to recover the costs of the medical treatment. *Id.* at

42. With the permission of the Board, Cole hired Kendal M. McVay, who is a partner in a law firm with attorney H. Kent Hollins, to represent them in the lawsuit. *Id.* at 54, 57-60. Plaintiff asserts that under Kansas statutes, the county—not Plaintiff—is responsible for the cost of the medical treatment. *Id.* at 44. In December 2017, however, McVay obtained a state-court order of garnishment for repayment of the medical treatment expenses. *Id.* at 54, 57; (Doc. 10-1, p. 7).

In December 2019, Melissa Brooke, the business manager of the Kansas Department of Corrections Centralized Inmate Banking (CIB), sent Plaintiff a letter advising him that CIB had been served with a garnishment order related to the debt owed to Rental Exchange System, Inc. (Doc. 10, 39, 45, 55; Doc. 10-1, p. 26.) At least $684.51 was taken from Plaintiff's inmate account under that garnishment order. (Doc. 10, p. 55.) Because some of this money was money that Ms. Espinoza had sent to Plaintiff's inmate account, Plaintiff believes that his VA benefits have been improperly garnished. Geeding failed to reply to numerous letters from Plaintiff about the garnishment, so Plaintiff filed a civil suit against him in the District Court of Ellsworth County, Kansas. *Id.* at 60. Redburn also has not replied to a letter from Plaintiff. *Id.*

In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the CARES Act), which, among other things, provided payments commonly called "stimulus payments" to eligible individuals. (Doc. 10, p. 15.) The Internal Revenue Service (IRS) issued a payment to Plaintiff under the CARES act on November 25, 2020, but Plaintiff never received it. *Id.* at 57-58. In December 2020, Congress passed the Consolidated Appropriations Act (CAA), which, in part, also provided payments to eligible individuals. *Id.* at 15. The IRS issued a payment to Plaintiff under the CAA on January 4, 2021, but Plaintiff never received it. *Id.* at 57-58. From Plaintiff's investigation, it appears that the two payments he did not receive have been sent to an unknown account at a bank other than the bank that holds Plaintiff's inmate account. *Id.* at 56.

Plaintiff also asserts that during his investigation, his inmate account records were modified or falsified. *Id.* at 57.

In March 2021, Congress passed the American Rescue Plan Act (ARPA), which also provided stimulus payments. *Id.* at 16. Plaintiff received a $1,400.00 payment under the ARPA on April 22, 2021. *Id.* at 57-58. Shortly afterward, his inmate account was garnished in the amount of $1,498.81 in accordance with the order obtained by McVay. *Id.* at 57. When Plaintiff wrote to Hollins and McVay, he learned that they represented the Shawnee County Department of Corrections, to which Plaintiff owed $3,794.44 as of October 20, 2020. *Id.* at 58-59. After Plaintiff's inmate account was garnished a second time, Plaintiff contacted the law firm of Hollins and McVay, sending them "a defendants answer a motion with a request for hearing [*sic*]." *Id.* at 46. Because neither Hollins nor McVay replied to Plaintiff's numerous letters, Plaintiff believes that they are engaged in a conspiracy with Cole, who hired them to collect the money. *Id.* at 60.

Based on the above events, Plaintiff has named as Defendants in his second amended complaint: Cole; McVay; Hollins; Geeding; Redburn; Brooke; Jeff Zmuda, the Secretary of the Kansas Department of Corrections (KDOC); the IRS; IRS Commissioner Roscoe L. Egger, Jr.; Board Commissioners Bill Piphahn, Kevin Cook, and Aaron Mays; and Denis McDonough, Secretary of the Department of Veterans Affairs. (Doc. 10, p. 1-2, 6-7.) On the required, court-approved form, Plaintiff asserts as Count I the violation of the Takings Clause of the Fifth Amendment to the United States Constitution, based on the following facts: "The Defendants violated the Plaintiff's [rights] by taking Federal money of stimulus payments by garnishment without a proper hearing with the Plaintiff [present in person] or by video prior to issu[]ing checks to attorneys." *Id.* at 3 (capitalization normalized).

As Count II, Plaintiff asserts the violation of his Fourteenth Amendment rights based on

6

the allegation that "Defendants did not follow federal injunction against tak[]ing inmates[']
money." *Id.* As Count III, Plaintiff asserts the violation of his "Constitutional rights to be secure
in [his] private property" because Defendants "failed to notify inmates of any garnishments prior
to taking inmates['] money." *Id.* As relief, Plaintiff seeks the return of his "federal money" with
interest calculated "from the dates the money was taken and sent to the attorneys who did the
illegal garnishments and a reasonable [amount of] punitive damage[s]." *Id.* at 5.

**III.    Discussion**

The Court must screen the second amended complaint and to dismiss it or any portion
thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from
a defendant immune from such relief. *See* 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. §
1915(e)(2)(B). As Plaintiff notes in his most recent submission (*see* Doc. 10, p. 27-29), because
he is pro se, this Court liberally construes his complaint and holds it to "less stringent standards
than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In
addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*,
469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual
allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."
*Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Even liberally construing the second amended complaint, taking all well-pleaded factual
allegations therein as true, and drawing all reasonable inferences in Plaintiff's favor, the second
amended complaint does not cure the deficiencies identified for Plaintiff in the Court's two
previous M&Os. Most broadly, it fails to comply with Rule 8.

As noted above, the three counts identified on the required complaint form are a Fifth
Amendment Takings Clause claim, a Fourteenth Amendment claim, and a claim that Plaintiff's

"Constitutional rights to be secure in [his] private property" were violated. (Doc. 10, p. 3-4.) The 210 pages attached to the court-approved form complaint, however, refer at various times to (1) violations of the Sixth Amendment, *id.* at 34; (2) the tort of defamation, *id.* at 12, 23, 31; (3) the crime of theft, *id.* at 12; (4) the violation of multiple Kansas statutes, *id.* at 13, 24, 44; (5) the suspension of Plaintiff's VA benefits, *id.* at 14; (6) the Kansas Tort Claims Act, *id.* at 20-21; (7) federal crimes, *id.* at 21, 26, 31; (8) the Electronic Funds Transfer Act, *id.* at 22; (9) the Administrative Procedure Act and the Little Tucker Act, *id.* at 24; (10) the Americans with Disabilities Act, *id.* at 25, 31, 33; (11) the Veterans Benefits Act, *id.* at 27; (12) fraud, *id.* at 32, 38, 43; (13) conspiracy, *id.* at 37; (14) attorney-client privilege and the crime-fraud exception to that privilege, *id.* at 38; and (15) disbarring the attorney defendants, *id.* at 37.

As explained in the second M&O, Rule 8 requires "a short and plain statement of the claim showing the pleader is entitled to relief." (Doc. 8, p. 3 (quoting Fed. R. Civ. P. 8(a)(2)).) Rule 8 "is designed to force plaintiffs 'to state their claims intelligibly so as to inform the defendants of the legal claims being asserted." *Baker v. City of Loveland*, 686 F. Appx. 691, 620 (10th Cir. 2017) (unpublished) (quoting *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007)). "[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994). When a complaint is unnecessarily long or includes a lot of irrelevant information, it may "run afoul of Rule 8." *Baker*, 686 F. Appx. at 620 (citing *Mann*, 477 F.3d at 1148).

Like Plaintiff's previous complaints, the scope of the second amended complaint is so broad and contains so much material that the Court cannot determine the precise basis or nature of Plaintiff's claims against each individual Defendant. "'It is not the role of the court to sort through a lengthy complaint to construct the plaintiff's case.'" (Doc. 8, p. 4 (quoting *Chavez v. Huerfano*

*County*, 195 Fed. Appx. 728, 730 (10th Cir. 2006) (unpublished)).) The Court warned Plaintiff that "[w]hen a plaintiff fails to comply with Rule 8, this Court is authorized to dismiss the complaint." (Doc. 8, p. 4 (citing *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162 n.3 (10th Cir. 2007)).) Despite this warning, Plaintiff has failed to comply with Rule 8.

Although this Court has the discretion to allow Plaintiff another opportunity to file a complaint that does not violate Rule 8, it declines to do so. This Court discussed the overly broad nature of Plaintiff's initial complaint and his amended complaint in its previous M&Os. (*See* Doc. 6, p. 6-8; Doc. 8, p. 2-4.) Plaintiff specifically was advised in the second M&O that although attaching additional pages to the form complaint is acceptable when necessary, "he should limit himself to necessary additions and organize additional pages in a way that allows for the Court and opposing parties to understand the claims being made." (Doc. 8, p. 7.) Yet Plaintiff's second amended complaint and attachments make up more than 200 pages, as did his previous pleadings and the attachments thereto.

Sifting through Plaintiff's overly lengthy complaints has "imposed a considerable burden" on the Court, *see Baker*, 686 F. Appx. at 620, and Plaintiff has not taken advantage of the opportunity already granted to submit a second amended complaint that complies with Rule 8. (*See* Doc. 8, p. 4 (noting that Rule 8 violations can lead to dismissal but "allow[ing] Plaintiff a final opportunity to clearly set forth his claims in this matter").) Moreover, the second amended complaint suffers from additional deficiencies this Court has identified in its two previous M&Os.[1]

---

[1] The second amended complaint names improper defendants who are federal actors or citizens not acting under color of state law, asserting the already-rejected argument that the private actors are liable under § 1983 because they utilized state courts to obtain garnishment orders. It fails to assert sufficient specific facts to show each and every Defendant's personal participation in a constitutional violation and instead refers to "Defendants" violating his rights. makes unsupported assertions of negligent supervision. It fails to allege sufficient facts to show negligent supervision that could lead to liability for the acts of someone supervised by the Defendant. It asserts the erroneous suspension of Plaintiff's VA benefits despite the Court previously explaining to Plaintiff that this Court lacks jurisdiction over the suspension of VA benefits. It seeks money damages from defendants immune claims for money damages.

Thus, the Court declines to allow Plaintiff the opportunity to further amend his complaint. *See Jensen v. West Jordan City*, 968 F.3d 1187, 1202 (10th Cir. 2020) (explaining that refusing leave to amend is justified when there is "'failure to cure deficiencies by amendments previously allowed'").

**IV.     Motion to Appoint Counsel**

With his second amended complaint, Plaintiff filed a motion to appoint counsel. (Doc. 9.) In his motion, Plaintiff states that he is unable to afford to hire private counsel and he reminds the Court that he has been granted leave to proceed in this matter in forma pauperis. *Id.* at 1. He further states that his imprisonment greatly limits his ability to litigate, his access to the law library is limited, and the issues in this case are complex and will require significant research and investigation. *Id.* at 2. Referring to his ability to represent himself, Plaintiff points out that the Court has twice ordered him to amend his petition and he asserts that counsel would be able to properly present Plaintiff's claims, whereas "Plaintiff is not knowledgeable of court procedure." *Id.* at 2-3.

As Plaintiff is aware, he has no constitutional right to appointment of counsel in this civil action. (*See* Doc. 6, p. 14 (citing *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995).) Rather, Plaintiff bears the burden to convince this Court that his claims have sufficient merit that the Court should exercise its discretion and appoint counsel. (*See id.* (citing *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991), and *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006).) He has not done so. The implication that Plaintiff's lack of knowledge of court procedures is the basis for his failure to comply with this Court's order to cure deficiencies in the initial and amended complaint is unpersuasive. The M&Os identified the deficiencies and explained to Plaintiff how to cure them, yet Plaintiff failed to do so.

**IT IS THEREFORE ORDERED** that the motion to appoint counsel (Doc. 9) is **denied**.

This matter is dismissed without prejudice.

**IT IS SO ORDERED.**

DATED:  This 28th day of May, 2024, at Kansas City, Kansas.

<u>S/ John W. Lungstrum</u>
JOHN W. LUNGSTRUM
United States District Judge

11